PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| ZEHENTBAUER FAMILY LAND LP, *et al.*, | ) | CASE NO.  4:15CV2449 |
|  | ) |  |
| Plaintiffs, | ) | |
|  | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
|  | ) | |
| CHESAPEAKE EXPLORATION, LLC, *et al.*, | ) | **MEMORANDUM OF OPINION AND ORDER** |
|  | ) | [Resolving ECF No. 2] |
| Defendants. | ) | |

Pending is Defendant Total E&P USA, Inc.'s ("TEPUSA") Motion to Stay (ECF No. 2). Defendants move the Court to stay this action pending the decision by the Ohio Supreme Court in *Lutz, et al. v. Chesapeake Appalachia, L.L.C.*, Ohio S.Ct. No. 2015-0545 (filed April 6, 2015). ECF No. 2 at PageID #: 174.  The Court has been advised, having reviewed the record, the parties' briefs and the applicable law.  For the reasons set forth below, the Court denies the motion to stay.

### I.  Procedural Facts & Background

Defendants contend that a case currently pending in the Northern District of Ohio before U.S. District Judge Sara Lioi, *Lutz v. Chesapeake Appalachia, L.L.C.*, No. 4:09CV2256 (N.D. Ohio filed Sept. 30, 2009) may narrow the question presented in the instant case.  ECF No. 2 at PageID #: 178 (citing *Lutz*, No. 2015-0545).  *Lutz* similarly deals with underpayment of oil and gas royalties allegedly due to class action plaintiffs.  In dispute in *Lutz* are royalty provisions

(4:15CV2449)

from oil and gas leases executed in the 1960s and 1970s that call for the calculation of royalties

"at the well" or "at the wellhead." *Lutz,* Respondents' Merit Brief, No. 2015-0545, 2015 WL

6558230, at *1 (Ohio S.Ct. Sept. 22, 2015). Specifically, the disputed provision states that, "The

royalties to be paid by Lessee are . . . the market value at the well of one-eighth of the gas so sold

or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount

realized from such sale." ECF No. 11 at PageID #: 214. Because Ohio courts offered no

interpretation of this language, Judge Lioi certified a question to the Ohio Supreme Court: "Does

Ohio follow the 'at the well' rule (which permits the deduction of post-production costs) or does

it follow some version of the 'marketable product' rule (which limits the deduction of post-

production costs under certain circumstances)?" Order Certifying Question to Ohio Supreme

Court (ECF No. 130 in No. 4:09CV2256) at PageID #: 3029. Oral arguments before the Ohio

Supreme Court took place on January 5, 2016 and, as of yet, no decision has been announced.

*Lutz*, Docket.

Plaintiffs filed a memorandum in opposition to the motion to stay arguing that Ohio

precedent views oil and gas leases as contracts and that contract interpretation should be applied

to these lease terms. ECF No. 11. Defendants Chesapeake Exploration, L.L.C., Chesapeake

Operating, L.L.C., and CHK Utica, L.L.C. ("Chesapeake Defendants") then joined TEPUSA's

motion. ECF No. 13. Plaintiffs oppose the joinder by stating that *Lutz* involves a narrow

interpretation of only one particular contractual royalty provision and will have no impact on the

2

(4:15CV2449)

specific terms of the instant leases.  ECF No. 21.[1]  TEPUSA filed a reply memorandum in support of the motion requesting a stay for reasons of judicial economy and alleging that Plaintiffs' filing of *amicus* briefs in the *Lutz* case proves the impact of the *Lutz* decision on the case at bar.  ECF No. 26.

The Court finds that further delay of the case at bar for the resolution of the certified question in *Lutz* is unlikely to be fruitful.

## II.  Legal Standard

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants,' and the entry of such an order ordinarily rests with the sound discretion of the District Court."  *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. Of Ohio*, 565 F.2d 393, 396 (6th Cir. 1977) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)).  The Court reviews the motion to stay proceedings with this in mind.

In determining whether to stay an action, courts generally consider three factors:  "(1) 'any prejudice to the non-moving party if a stay is granted,' (2) 'any prejudice to the moving party if a stay is not granted,' and (3) 'the extent to which judicial economy and efficiency would be served by the entry of a stay.'"  *Williams v. City of Cleveland*, No. 1:09CV2991, 2011 WL 2848138, at *2 (N.D. Ohio July 14, 2011) (Pearson, J.) (quoting *Voeltner v. Gen. Elec. Co.*, No. 2:07-CV-0943, 2007 WL 4287649, at *1 (S.D. Ohio Dec. 4, 2007)).

---

[1]  Plaintiffs were granted leave to refile a memorandum in opposition to Defendant's Motion to Stay.  Non-document Order dated December 23, 2015.

(4:15CV2449)

### III. Analysis

The *Lutz* action involves three royalty provisions, only one of which provides for royalties on "the market value *at the well* of one-eighth of the gas so sold."  ECF No. 11 at PageID #: 214.  This is the only lease that the Ohio Supreme Court was asked to decipher.  While the "at the well" language was used in that lease, the lease did not detail the method for calculating royalties, something the Chesapeake Exploration leases in the instant case attempts.  *See Lutz*, Respondents' Merit Brief, No. 2015-0545, 2015 WL 6558230, at *15.  There are no provisions in the *Lutz* lease discussing whether the royalty is to be based on the gross proceeds or net proceeds, nor does it include a provision discussing deductions.  ECF No. 11 at PageID #: 214.  Each of these provisions are found in the leases at issue with Chesapeake Exploration.  Plaintiffs' Gross Royalty Leases provide, in pertinent part:

**ROYALTIES**.  The Lessee covenants and agrees:

a.   Oil Royalty.  To pay the Lessor . . . royalty based upon the **gross proceeds** paid to the Lessee from the sale of oil, including without limitation other liquid hydrocarbons or their constituents and products thereof recovered from the leased premises.

b.   Gas Royalty.  To pay to the Lessor . . . royalty based upon the **gross proceeds** paid to Lessee for the gas marketed and used off the leased premises, including casinghead gas or other gaseous substance, and produced from each well drilled thereon, **computed at the wellhead** from the sale of such gas substances so sold by Lessee in an arms-length transaction to an unaffiliated *bona fide* purchaser, or if the sale is to an affiliate of Lessee, the price upon which royalties are based shall be comparable to that which could be obtained in an arms-length transaction (given the quantity and quality of the gas available for sale from the leased premises and for a similar contract term) and **without any deductions or expenses**.  For purposes of this Lease, "**gross proceeds**" means the **total consideration paid for oil, gas, associated hydrocarbons, and**

4

(4:15CV2449)

> **marketable by-products produced from the leased premises without deductions of any kind** except as provided in paragraph 44.[2]  (Emphasis added.)

Class Action Complaint (ECF No. 1-1) at PageID #: 21-24, ¶¶ 25-29.

Both parties' briefs in *Lutz* agree that a court must "look to the plain and ordinary meaning of the language used" and that a court "is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties." *Lutz*, Respondents' Merit Brief, No. 2015-0545, 2015 WL 6558230, at *16 (quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 219 (2003)).  During oral argument, counsel urged caution in issuing too broad an answer to the certified question.  *Lutz*, Oral Argument, No. 2015-0545, SUPREME COURT OF OHIO (Jan. 5, 2016).  When asked by Chief Justice Maureen O'Connor whether the certified question applies "when the contract itself is silent as to these issues," Petitioner answered that "marketable product . . . has come up in different cases, but it's come up where the lease is determined to be ambiguous in some states and another place where it's called a gap-filler." *Id.* at 00:53 in.  The parties in *Lutz* agree that the language in the disputed leases is not ambiguous.  *Id.* at 01:20 in. The certified question before the Ohio Supreme Court does not apply to all Ohio oil and gas leases, but rather to leases that are identically vague in deciding how to calculate royalties and offer no decipherable intent of the parties.  The contract terms between Plaintiffs and Defendants in the instant case appear to decide how to calculate royalties and demonstrate the parties' intent to calculate royalties in a specific manner.  According to Plaintiffs, the parties agreed that

---

[2]  *N.B.* Paragraph 44 only allowed deductions for lessor's proportionate share of ad valorem taxes.

(4:15CV2449)

royalties would be calculated on the gross proceeds of Plaintiffs' products without any

deductions, except governmentally-imposed taxes.  ECF No. 11 at PageID #: 212.

Defendants draw the Court's attention to Plaintiffs' *amicus* brief filed in *Lutz*.

Defendants argue this filing as evidence that the *Lutz* decision will impact Plaintiffs' leases.

Plaintiffs concede filing an *amicus* brief in *Lutz*, but dispute the broader implication of this filing.

ECF No. 11 at PageID #: 212.  Plaintiffs' *amicus* brief argues that many Ohio oil and gas leases

already contain negotiated-for, specific terms in calculating royalties and that their leases

specifically reflect that negotiation.  *Lutz*, Brief of Sam Johnson, Zehentbauer Family Land LP,

Hanover Farms LP, and Bounty Minerals, LLC *Amici Curiae* not Filed in Support of Any Parties,

No. 15-0545, 2015 WL 6558229, at *15 (Sept. 22, 2015).  In sum, Plaintiffs' brief merely

demonstrates that "the law applicable to one form of lease may not be, and generally is not,

applicable to another and different form."  *Lutz*, Reply Brief of Petitioner Chesapeake

Appalachia, L.L.C., No. 2015-0545, 2015 WL 6558233, at *18 (Oct. 13, 2015).

During the *Lutz* oral argument, both parties made it clear that the certified question only

applies when the lease in dispute is ambiguous or leaves unfilled gaps.  Petitioner argued, "I want

to be clear.  This is a narrow question before the Court.  It is not to rule on every lease."  *Lutz*,

Oral Argument, No. 2015-0545 at 04:12 in.  Among those specific ones that get negotiated are

"gross proceeds" valuations.  *Id.* at 05:43 in.

The question before the Ohio Supreme Court is more narrow than Defendants claim:

when royalties are to be valued at the well and do not specify procedural terms for calculating

royalties, which rule does Ohio prefer to follow?  ECF No. 2-1 at PageID #: 182.  This is not the

(4:15CV2449)

question in the instant case nor does it narrow the question in the instant case.  It appears that Plaintiffs and Defendants chose to follow the "at the well" rule by calculating royalties based on the gross proceeds paid to Plaintiffs, taking no deductions except for those levied for governmental taxes.

Neither Plaintiffs nor Defendants will be prejudiced by a ruling on the motion to stay at this time.  A significant amount of time has already passed without the case being set for Case Management Conference, and any further delay will detract from the  judicial economy and efficiency of this Court.  Accordingly, because it is likely that answer will not apply to the instant case, there is no need to stay the proceedings for an answer from the Supreme Court of Ohio.

### IV.  Conclusion

For the foregoing reasons, the Court denies Defendant Total E&P USA, Inc.'s Motion to Stay (ECF No. 2).


IT IS SO ORDERED.


 July 19, 2016                                                 /s/ Benita Y. Pearson                          
Date                                                          Benita Y. Pearson
                                                             United States District Judge

7