PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ZEHENTBAUER FAMILY LAND LP, *et al.*, | ) ) ) | CASE NO.  4:15CV2449 |
| Plaintiffs, | ) ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) ) | |
| CHESAPEAKE EXPLORATION, LLC, *et al.*, | ) ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendants. | ) ) | [Resolving ECF Nos. 14 and 20] |

Pending is Chesapeake Exploration, L.L.C., Chesapeake Operating, L.L.C., and CHK Utica, L.L.C.'s ("Chesapeake Defendants") Motion for Partial Dismissal (ECF No. 14). Chesapeake Defendants move the Court pursuant to Fed. R. Civ. P.12(b)(6) for an order:  (a) dismissing all claims against Chesapeake Operating, L.L.C. ("Chesapeake Operating"), (b) dismissing Counts Two and Four in their entirety, and (c) dismissing the claim for breach of express covenant to market in Count Three.  ECF No. 14 at PageID #: 234.  Also pending is Defendants Pelican Energy, L.L.C. ("Pelican") and Jamestown Resources, L.L.C.'s ("Jamestown") Motion for Partial Dismissal (ECF No. 20).  Pelican and Jamestown move the Court for an order:  (a) dismissing Counts Two and Four in their entirety, and (b) dismissing the claim for breach of express covenant to market in Count Three.  ECF No. 20 at PageID #: 291.

(4:15CV2449)

The Court has been advised, having reviewed the record, the parties' briefs[1] and the applicable law. For the reasons set forth below, the Court grants in part and denies in part the motions.

## I. Procedural Facts & Background

Plaintiffs filed a putative class action in the Columbiana County, Ohio Court of Common Pleas, seeking compensation for damages they and class members sustained when Defendants allegedly underpaid royalties due under certain oil and gas leases. ECF No. 1-1 at PageID #: 26, ¶ 41. The four-count Class Action Complaint (ECF No. 1-1 at PageID #: 14-168) alleges claims for breach of contract (Count One), breach of contract – implied covenants (Count Two), breach of contract – breach of express covenants (Count Three), and accounting (Count Four).

Defendants removed the case to this Court on November 30, 2015 pursuant to 28 U.S.C. §§ 1441 and 1446, and based upon diversity jurisdiction under 28 U.S.C. § 1332(d), invoking the Class Action Fairness Act of 2005 ("CAFA"). ECF No. 1 at PageID #: 3, ¶¶ 9-10. In their Complaint, Plaintiffs allege that Defendants breached the terms of their oil and gas leases by deducting production and post-production costs from royalties due to Plaintiffs and by selling their oil products to affiliates at sub-market prices. ECF No. 1-1 at PageID #: 27, ¶¶ 41-49.

Plaintiffs filed a combined memorandum in opposition to the within motions and argue that: (1) their claims against Chesapeake Operating are justified due to its capacity as the issuer of royalty checks to Plaintiffs; (2) their claims for breach of implied covenants were properly pled in the alternative; (3) the express covenant to market requires these Defendants to cover the

---

[1] Pelican and Jamestown incorporate by reference the arguments set forth by the Chesapeake Defendants in ECF No. 15.

(4:15CV2449)

cost for marketing as well as the process of bringing the product to market; and (4) that they are due an equitable remedy because these Defendants did not properly issue itemized deductions on their royalty payments. ECF No. 37.

## II. Legal Standard

To survive a Fed. R. Civ. P.12(b)(6) motion to dismiss, the plaintiff's complaint must allege enough facts to "raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Fed. R. Civ. P. 8(a)(2) requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint requires "further factual enhancement," which "state[s] a claim to relief that is plausible on its face." *Id.* at 557, 570. A claim has facial plausibility when there is enough factual content present to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a claim lacks "plausibility in th[e] complaint," that cause of action fails to state a claim upon which relief can be granted. *Twombly*, U.S. 550 at 564.

(4:15CV2449)

## III.  Analysis

### A.  Claims Against Chesapeake Operating

Plaintiffs allege in the Complaint, that Chesapeake Operating is an agent of Chesapeake Exploration, L.L.C. ("Chesapeake Exploration") (ECF No. 1-1 at PageID #: 20, ¶ 18) and that Chesapeake Operating is "the operator of Defendants' oil and gas wells . . . [that] handles the accounting of and payments of Plaintiffs' royalties." (ECF No. 1-1 at PageID #: 26, ¶ 40). Chesapeake Operating's royalty statements allegedly included codes for any deductions taken from those royalties.  ECF No. 1-1 at PageID #: 26 ¶ 43.  In their motion for partial dismissal, the Chesapeake Defendants state that these allegations are incorrect and request that all claims be dismissed as to Chesapeake Operating.  ECF No. 15 at PageID #: 247.  They contend that Plaintiffs have sued the Chesapeake lease counterparties, Chesapeake Exploration and CHK Utica, L.L.C. ("CHK Utica"), but have also named their affiliate, Chesapeake Operating, as a defendant.  ECF No. 15 at PageID #: 241.  Because Plaintiffs' claims pertain to breach of contract, Defendants argue that Chesapeake Operating should be dismissed because it is not a party to the leases.  ECF No. 15 at PageID #: 241.  Additionally, the Chesapeake Defendants argue that Plaintiffs' allegations against an affiliate are insufficient in a breach of contract claim unless Plaintiffs can prove privity of contract or agency theory.  ECF No. 15 at PageID #: 247.

Plaintiffs oppose this ground for dismissal by clarifying that their causes of action pertain to the underpayment of royalties and that, because Chesapeake Operating is the issuer of their royalties, this affiliate is a proper party to the suit at this stage of the proceedings.  ECF No. 37 at PageID #: 426.  The only legal entity identified on the royalty statements is Chesapeake

4

(4:15CV2449)

Operating.  ECF No. 37 at PageID #: 426.  The royalty checks indicate that, as the payor of royalties, the funds are drawn from Chesapeake Operating's revenue distribution account.  ECF No. 37 at PageID #: 426.  This is consistent with Plaintiffs' allegations in the Complaint.  ECF No. 1-1 at PageID #: 23-24, ¶¶ 27-29.  Plaintiffs' Complaint alleges that because the Chesapeake Defendants breached their lease as joint venturers, then each of these Defendants would be responsible for the wrongful conduct.  ECF No. 1-1 at PageID #: 36, ¶ 82.  Plaintiffs also allege that the Chesapeake Defendants attempted to conceal these breaches by not disclosing deductions on the royalty statements.  ECF No. 1-1 at PageID #: 37, ¶ 88.

The Court finds Plaintiffs have provided "further factual enhancement," which "state[s] a claim to relief that is plausible on its face" as to Chesapeake Operating.  *Twombly*, 550 U.S. at 557, 570.  Chesapeake Operating, as the issuer of the royalties from which Plaintiffs allege there have been wrongful deductions, is necessary to Plaintiffs' claims.  At this stage of the proceedings and before discovery has commenced, Plaintiffs have alleged that the issuer of their royalty checks plays some part in the improper deductions from those checks.  Because Chesapeake Operating transacts business in the same location as Chesapeake Exploration and CHK Utica, Plaintiffs' claims have presented enough factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678.

Accordingly, the Court denies Chesapeake Defendants' motion to dismiss Chesapeake Operating as a defendant.

(4:15CV2449)

### B. Claim for Breach of Contract – Implied Covenants in Count Two

In the Class Action Complaint (ECF No. 1-1 at PageID #: 14-168), Plaintiffs allege that Defendants breached the implied covenant to market the oil and gas, the implied covenant to conduct all operations that affect the lessor's royalty interest with reasonable care and due diligence, and the implied covenant of good faith and fair dealing. ECF No. 1-1 at PageID #: 38, ¶ 95. Defendants assert that this claim fails because each of the implied covenants are express terms of their leases and Ohio does not recognize a stand-alone claim for breach of duty of good faith and fair dealing. ECF No. 15 at PageID #: 248. Plaintiffs argue that their claim for breach of implied covenants is pled in the alternative which is permissible under Fed. R. Civ. P. 8. ECF No. 37 at PageID #: 430.

Ohio law addresses Plaintiffs' alleged pleading in the alternative as it pertains to oil and gas leases. The Ohio Supreme Court has found that "[t]he implied covenant arises only when the lease is silent on the subject." *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 128 (1897). "A party does not state an independent claim for relief for breach of an implied covenant when an expressed term of the contract covers the specific matter." *Eggert Agency, Inc. v. NA Management Corp.*, No. C2-07-1011, 2008 WL 3474148, at *5 (S.D. Ohio Aug. 12, 2008) (citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.,* 86 Ohio St.3d 270, 274 (1999) (holding that a specific clause in the contract governed the purported breach rather than an implied covenant); *McClorey v. Hamilton Cty. Bd. of Elections,* 130 Ohio App.3d 621, 626 (1998) (holding that the court need not determine if there was an implied covenant because the issue was covered by express language in the lease); *Jost v. Burr,* 69 Ohio App.3d 354, 359 (1990) (holding

6

(4:15CV2449)

that there are no implied promises in relation to any matter that is specifically covered by the written terms of a contract)).

Plaintiffs' claims for the breach of the express covenant to market the oil and gas, express covenant to conduct all operations that affect the lessor's royalty interest with reasonable care and due diligence, and express covenant of good faith and fair dealing are each contained in the allegations of Count Three.  ECF No. 1-1 at PageID #: 39, ¶¶ 103-105.  Because Plaintiffs' leases are not silent on these covenants, they may not state an independent claim for relief for breach of implied covenants.  *Harris*, 57 Ohio St.3d 128.

Additionally, Ohio law does not support a stand-alone claim for breach of the implied covenant of good faith.  The Sixth Circuit confirmed that "the implied covenant of good faith is a construction aid that helps a court determine the intent of the parties; it cannot be used to add terms to the contract when there is no evidence that the parties intended that those terms be included."  *Metro Communications Co. v. Ameritech Mobile Communications, Inc.*, 984 F.2d 739, 743 (6th Cir. 1993).  In *Thomasville Furniture Indus., Inc. v. JGR, Inc.*, 3 Fed.Appx. 467 (6th Cir. 2001), the Sixth Circuit acknowledged that although, "good faith is part of a contract claim[, it] does not stand alone."  *Id.* at 472.  The implied covenant of good faith and fair dealing "means only that, when a contract is susceptible to a fraudulent interpretation as well as an honest one, the latter should be presumed," and that the covenant is not an independent basis for a cause of action.  *Ebie v. Teledyne Indus., Inc.*, 859 F.2d 152, No. 87-3852, 1988 WL 98366, at *4 (6th Cir. Sept. 21, 1988).

Accordingly, the Court grants the motions to dismiss Count Two in its entirety.

7

(4:15CV2449)

### C. Claim for Breach of Express Covenant to Market in Count Three

Plaintiffs allege that Lessee explicitly had a duty to "market any saleable products produced on the leased premises as may be necessary to fully develop the leased premises." ECF No. 1-1 at PageID #: 39, ¶ 104.  Next, Plaintiffs allege that Defendants breached this covenant by deducting from Plaintiffs' and the class members' royalties certain production and/or post-production costs necessary to market the saleable products produced on the leased premises. ECF No. 1-1 at PageID #: 39, ¶ 105.  In their motions for partial dismissal, Defendants contend that Plaintiffs have conceded the failure of their claim for breach of express warranty to market. Defendants argue that because Plaintiffs admit that the oil and gas were marketed, that Defendants could not have breached the covenant to market.  ECF No. 15 at PageID #: 12-13 (citing ECF No. 1-1 at PageID #: 39, ¶¶ 102-108).

Plaintiffs respond that the covenant to market is more than just bringing the product to market and includes the costs for the marketing, as well.  Plaintiffs contend their royalty payments are to be based upon the gross proceeds paid to the lessee for the gas marketed without any deductions or expenses, except for a deduction for lessors' prorated share of the government imposed taxes/fees.  Plaintiffs maintain that "defendants mischaracterize [their] duty to market claim as one for a violation of the duty to develop."  According to Plaintiffs, "[a] covenant to market obligates the lessee to engage in marketing efforts which would be reasonably expected of all operators of ordinary prudence," and "[t]he duty to market requires the lessee and operator to sell the gas at reasonable terms."  ECF No. 37 at PageID #: 439.  Plaintiffs support this argument with a citation to an Oklahoma Supreme Court case holding that "[a] royalty owner has

(4:15CV2449)

a right to be paid on the best price available" and "[w]hen the actual value is not obtainable because of a producer's self-dealing, the courts will carefully scrutinize the transactions on which the royalty payments are based." *Howell v. Texaco Inc.*, 112 P.3d 1154, 1160 (2004).

In reply, Defendants offer more instructive Ohio jurisprudence.  Defendants cite *Moore v. Adams*, a decision from the Fifth District Court of Appeals of Ohio, which provides that "[t]he covenant to market the product places an obligation upon a lessee to use due diligence to market the gas and/or oil produced from a well." *Moore v. Adams*, No. 2007AP090066, 2008 WL 4907590, at *5 (Ohio App. 5th Dist. Nov. 17, 2008) (holding that a producer who shut-in a well that had been producing, rather than fixing its damaged pipeline, failed to use reasonable care and due diligence in conducting operations and marketing the product).  There is no mention that the covenant to market includes a duty to obtain the best available price for the lessor.  Furthermore, "[t]he parties to a lease cannot prescribe the exact duties of the lessee respecting the marketing of the oil or gas produced, nor the time and manner of their performance." 2 Summers Oil and Gas § 18:10 (3d ed.).  Admittedly, Ohio law offers little jurisprudence defining the covenant to market.  But, what little exists does not include a lessee's duty to achieve the "best available price."  Ohio law only requires due diligence and Plaintiffs have not alleged Defendants' failure to meet this standard.

Accordingly, the Court grants the motions to dismiss the claim for breach of express covenant to market in Count Three.

(4:15CV2449)

### D. Count Four

Finally, Plaintiffs allege a claim for accounting in the Class Action Complaint. ECF No. 1-1 at PageID #: 40, ¶¶ 109-11. Plaintiffs allege that they are entitled to a full accounting from Defendants, at Defendants' sole cost, of (1) all deductions assessed against their and the class members' royalties, (2) the actual volumes of oil and gas produced under the Gross Royalty Leases, (3) the actual prices at which Defendants sold the oil and gas produced under the Leases, and (4) the actual market price when Defendants sold the oil and gas produced under the Leases. ECF No. 1-1 at PageID #: 40, ¶ 111. In the motions for partial dismissal, Defendants contend that Count Four fails because the information Plaintiffs seek was readily ascertainable pursuant to the audit provisions of their leases, as well as through discovery. ECF No. 15 at PageID #: 242 and 253. Defendants also argue that, even if Plaintiffs could not access this information through the audit provisions, an equitable remedy of accounting is only available when a legal remedy is insufficient. Defendants state that Plaintiffs' breach of contract claim is a sufficient legal remedy. ECF No. 15 at PageID #: 253. In opposition, Plaintiffs contend that they each sent a letter by certified mail complaining that their royalties had been impermissibly reduced by undisclosed deducted costs and expenses. ECF No. 37 at PageID #: 442. *See also* ECF No. 1-1 at PageID #: 19, ¶ 14. In all three of these letters, Plaintiffs demanded the money allegedly due pursuant to their leases. However, in only one letter— sent by Plaintiff Young—does a plaintiff specifically "put the Defendants on notice." None of the letters refer to a request for auditing, a statement of deductions, or make any reference to the audit rights of Plaintiffs. ECF No. 1-1 at PageID #: 118-22.

(4:15CV2449)

An accounting claim "must set forth operative facts which, when construed in the plaintiff's favor, establish a right to the requested relief." *Davis v. DCB Fin. Corp.*, 259 F. Supp.2d 664, 674 (S.D. Ohio 2003) (citing *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 814 (2000)). "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law." *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962). *See also Bradshaw v. Thompson,* 454 F.2d 75, 79 (6th Cir. 1972); *Complete Bldg. Show Co. v. Albertson*, 99 Ohio St. 11, 16 (1918); *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, No. 2:06-CV-00126, 2007 WL 1144866, at *4 (S.D. Ohio April 16, 2007). The Supreme Court, in *Dairy Queen*, explained that in order to maintain a suit for an equitable accounting, "the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." *Dairy Queen*, 369 U.S. at 478 (quoting *Kirby v. Lake Shore & Michigan Southern R. Co.*, 120 U.S. 130, 134 (1887)). *See also Business Payment Sys., LLC v. Nat'l Processing Co.*, No. 3:10-CV-00669, 2012 WL 6020400, at *17 (W.D. Ky. Dec. 3, 2012).

Plaintiffs argue that "at the motion to dismiss stage[,] plaintiffs need only allege that there was no adequate remedy at law and that the determination of whether a legal remedy exists is more appropriate after commencement of discovery and upon filing of summary judgment motions." ECF No. 37 at PageID #: 443. Like the district court in *Business Payment Sys., LLC* found, 2012 WL 6020400, at *18, Plaintiffs in the case at bar have not met their burden at the motion to dismiss stage. Plaintiffs have not alleged anywhere in the Class Action Complaint

11

(4:15CV2449)

(ECF No. 1-1 at PageID #: 14-168) that there is no adequate remedy at law.[2] Nor have Plaintiffs alleged that the accounts between the parties are of such a "complicated nature" that a court of equity is necessary to unravel them. See id.; *Phillippi v. Jim Phillippi, Inc.*, Nos. 2:07-cv-916, 2:07-cv-1001, 2009 WL 1911763, at *3 (S.D. Ohio June 26, 2009); *Digital 2000, Inc. v. Bear Communications, Inc.,* 130 Fed.Appx. 12, 23 (6th Cir. 2005).

Plaintiffs are entitled to a full accounting of the deductions that were taken from their royalties. However, this entitlement was presented to them in their audit rights contained in the leases signed with Defendants. ECF No. 1-1 at PageID #: 47, ¶ 5(e). Although Plaintiffs apparently have not availed themselves of these rights, Plaintiffs can still obtain the information they desire through discovery. *Pay(q)r, LLC v. Sibble*, No. 5:15CV1038, 2015 WL 9583034, at *12 (N.D. Ohio Dec. 31, 2015) (Pearson, J.). "[T]he liberal discovery procedures of the Federal Rules operate to make the legal remedies more 'adequate' than before." *Bradshaw*, 454 F.2d at 79. "In light of the broad discovery available to litigants, accounting actions are of dubious utility." *Digital 2000, Inc.*, 130 Fed.Appx. at 23. In connection with their breach of contract claim, Plaintiffs have a liberal discovery right under the Federal Rules of Civil Procedure to determine the extent to which Defendants allegedly deducted production and/or post-production costs from their royalties due under their leases and the value at which their products were sold. See *Bradshaw*, 454 F.2d at 79.

---

[2] Plaintiffs only allege that "Defendants failed to pay Plaintiffs and the Class members the full amount of their royalties provided under the Gross Royalty Leases" and "Plaintiffs and the Class members are entitled to a full accounting. . . ." ECF No. 1-1 at PageID #: 40, ¶¶ 110-111.

(4:15CV2449)

Accordingly, the Court grants the motions to dismiss Count Four in its entirety.

## IV.  Conclusion

For the foregoing reasons,

Chesapeake Exploration, L.L.C., Chesapeake Operating, L.L.C., and CHK Utica, L.L.C.'s Motion for Partial Dismissal (ECF No. 14) is granted in part and denied in part.

Defendants Pelican Energy, L.L.C. and Jamestown Resources, L.L.C.'s Motion for Partial Dismissal (ECF No. 20) is granted.

Counts Two and Four and the claim for breach of express covenant to market in Count Three of the Class Action Complaint (ECF No. 1-1 at PageID #: 14-168) are dismissed as to Defendants Chesapeake Exploration, L.L.C., Chesapeake Operating, L.L.C., CHK Utica, L.L.C., Pelican Energy, L.L.C., and Jamestown Resources, L.L.C.

Count One and the remainder of Count Three remain against these Defendants.

IT IS SO ORDERED.

| | |
|---|---|
| July 19, 2016 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |