PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ZEHENTBAUER FAMILY LAND LP, *et al.*, | ) ) CASE NO. 4:15CV2449 |
| Plaintiffs, | ) ) |
| | ) JUDGE BENITA Y. PEARSON |
| v. | ) ) |
| CHESAPEAKE EXPLORATION, L.L.C., *et al.*, | ) ) **MEMORANDUM OF OPINION** |
| | ) **AND ORDER** |
| Defendants. | ) [Resolving ECF No.103 ] |

Pending is Plaintiffs' Motion for Class Certification (ECF No. 103). The Court has been advised, having reviewed the record, the parties' briefs and the applicable law. For the reasons set forth below, the Court grants the motion in part.

**I. Background**

Plaintiffs Zehentbauer Family Land LP ("Zehentbauer"); Hanover Farms LP ("Hanover"); and Evelyn Frances Young, Successor Trustee of The Robert Milton Young Trust ("Young") filed suit against Defendants Chesapeake Exploration L.L.C. ( "CELLC"), Chesapeake Operating L.L.C., CHK Utica, L.L.C., Total E&P USA, Inc. ("TEPUSA"), Pelican Energy L.L.C., and Jamestown Resources L.L.C. *See* Class Action Complaint (ECF No. 1-1) at PageID #: 14-43.

Defendants are in the business of oil and gas exploration and production. Plaintiffs are landowners located throughout eastern and southeastern Ohio who entered into oil and gas lease

(4:15CV2449)

agreements with Ohio Buckeye Energy LLC ("Buckeye") and CELLC. CELLC later merged with Buckeye and acquired Buckeye's lease rights. CELLC then leased those rights to the various defendants. Though the leases changed hands, the obligations remained unchanged. ECF No. 1-1 at PageID #: 20. Under these agreements, Defendants obtained Plaintiffs' oil and gas rights in exchange for a combination of fees and royalty payments of varying percentages. ECF No. 1-1 at PageID #: 45, 67, 68, 90, 91, 127, 128. Plaintiffs allege that Defendants have improperly reduced royalty payments by selling hydrocarbons with greater sale price deductions than is allowable under the agreements. ECF No. 1-1 at PageID #: 41.

Plaintiffs split the leases into three subclasses or "Groups" Group A, Group B, and Group C. ECF No. 101-1 at PageID #: 2723-25, ¶ 5. Royalty provisions dictating payments for oil and gas products are common to each lease in the proposed class, although the royalty language varies among the subclasses. Group A's royalty provisions both contain language governing the sale price and royalty percentage, but the gas royalty provisions of the subclass contain a definitional clause and a comparable sales requirement ("CSR") that the oil royalty provision does not. The definitional clause outlines the substances governed by the provision and the CSR governs hydrocarbon sales to corporate affiliates. Both of Group B's royalty provisions contain a CSR and the definitional clause. And finally, Group C's provisions both have the definitional clause, but no CSR. ECF 101-1 at PageID #: 2723, ¶ 5(a).

Zehentbauer and Hanover have lease agreements that are a part of Group A and Young has an agreement in Group B. None of the named plaintiffs, however, have leases in Group C.[1] ECF No. 101-1 at PageID #: 2723-25, ¶ 5. Plaintiffs have moved to merge their claims and the claims of the other lessors into one action based upon the common claim that Defendants improperly reduced the royalties due. ECF No. 103 at PageID #: 3302.

## II.  Standard of Review

Class actions are the "exception" to the general rule that parties litigate issues by and for themselves. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (citation omitted). Indeed, class actions are only appropriate when there are common questions with common answers that "advance the litigation" towards resolution. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). Class certification is only proper in cases when the Court finds, after a "rigorous analysis," that the proposed class fulfills all the requirements of Fed. R. Civ. P. 23. *Dukes*, 131 S. Ct. at 2551. This analysis often requires at least a glance beyond the pleadings as the relevant details are frequently intertwined with the legal and factual considerations of the litigation. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982). Within this framework, district courts are given broad discretion in determining whether class certification is proper. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 559-60 (6th Cir. 2007). The party moving to certify the class

---

[1] There is only one lease in Group C. *See* Exhibit "2" to Affidavit of Diana L. Tschantz (ECF No. 101-3) at PageID #: 2814.

(4:15CV2449)

must demonstrate the propriety of a class action under Rule 23. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

### III. Discussion

In order for class certification to be appropriate, the Court must find that the moving party has shown the proposed class to be well-defined by objective criteria, that each requirement of Rule 23(a) has been satisfied, and that the class meets one of the definitions listed under Rule 23(b).

**A. Class Definition**

Class certification is only appropriate when the proposed class is limited by definite and objective criteria. *Edwards v. McCormick*, 196 F.R.D. 487, 491 (S.D. Ohio 2000). "Fail-safe" classes those for which the definition only becomes fixed upon resolution on the merits will not be certified. *See Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir.2011). The characteristics that dictate membership in the class must be definite to ensure the class is administratively feasible. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (citing *Crosby v. Soc. Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986)). In this case the class moving to be certified has been defined as:

> All persons entitled to royalty payments from Chesapeake Exploration, LLC, Chesapeake Operating, Inc., CHK Utica, LLC, Total E&P USA, Inc., Pelican Energy, L.L.C., and/or Jamestown Resources, L.L.C. at any time during the years of 2011 to the present under uniform oil and gas leases, known generally as Gross Royalty Leases, (some originally entered by Buckeye Exploration Corporation) which state that the lessors royalty shall be the stated percentage of the gross proceeds received by the lessee without any deductions except for a pro-rata share

4

(4:15CV2449)

>of governmentally imposed taxes and fees, in return for granting rights to produce oil, natural gas, and the constituents thereof from real property located in Ohio. Excepted from the foregoing class are persons who have filed separate actions requesting the relief sought here and those who have resolved claims requesting the relief sought here. Further excepted from the class are any such lessors employed or owned by any of the Defendants.

ECF No. 103 at PageID #: 3302.

Defendants do not challenge either the proposed class definition or that each of the named Plaintiffs own "Gross Royalty Leases" that fall within the stated definition. ECF Nos. 72-5, 72-6, 72-7.

### B. Rule 23(a) Prerequisites

In addition to being well-defined, each class must meet the requirements of Fed. R. Civ. P. 23(a). Rule 23(a) lists four criteria that must be met for class certification to be appropriate: numerosity, commonality, typicality, and adequacy of representation. Additionally, there is a fifth implied prerequisite of ascertainability created by the listed requirements. *See Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 430-31 (6th Cir. 2009).

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Rule 23(a)(1) calls for an examination of the specific facts of each case, but there are no predetermined numbers or levels that denote a sufficiently numerous class. *Gen. Tel. Co. of the Northwest v. Equal Emp. Opportunity Commission*, 100 S.Ct. 1698, 1706 (1980). Although "there is no strict numerical test," the Sixth Circuit has stated that a class of

(4:15CV2449)

>of governmentally imposed taxes and fees, in return for granting rights to produce oil, natural gas, and the constituents thereof from real property located in Ohio. Excepted from the foregoing class are persons who have filed separate actions requesting the relief sought here and those who have resolved claims requesting the relief sought here. Further excepted from the class are any such lessors employed or owned by any of the Defendants.

ECF No. 103 at PageID #: 3302.

Defendants do not challenge either the proposed class definition or that each of the named Plaintiffs own "Gross Royalty Leases" that fall within the stated definition. ECF Nos. 72-5, 72-6, 72-7.

### B. Rule 23(a) Prerequisites

In addition to being well-defined, each class must meet the requirements of Fed. R. Civ. P. 23(a). Rule 23(a) lists four criteria that must be met for class certification to be appropriate: numerosity, commonality, typicality, and adequacy of representation. Additionally, there is a fifth implied prerequisite of ascertainability created by the listed requirements. *See Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 430-31 (6th Cir. 2009).

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Rule 23(a)(1) calls for an examination of the specific facts of each case, but there are no predetermined numbers or levels that denote a sufficiently numerous class. *Gen. Tel. Co. of the Northwest v. Equal Emp. Opportunity Commission*, 100 S.Ct. 1698, 1706 (1980). Although "there is no strict numerical test," the Sixth Circuit has stated that a class of

(4:15CV2449)

"substantial" numbers is sufficient to satisfy the requirement. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). There are no hard rules as to what a "substantial" number is, but "a class of 40 or more members raises a presumption of impracticability." 1 William B. Rubenstein, Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 3:12 (5th ed. 2017).

Plaintiffs claim there are 295 leases and even more assignments in question, ECF No. 103-1 at PageID #: 3313, and Defendants state that there are only 272 leases that meet the membership requirements. ECF No. 109-1 at PageID #: 3543. Determining which number is correct is irrelevant at this point. The parties seem to agree that the number is greater than 200 and that is "substantial." Defendants do not challenge Plaintiffs' numerosity argument.

Given the size of the proposed class and the nature of the claims the numerosity requirement is satisfied.

**2. Commonality**

Commonality requires that there be "questions of law or fact common to the class." Rule 23(a)(2). A common issue for the purposes of class certification is one "[t]hat determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. The commonality analysis ensures there is at least one common issue with a common answer that will "advance the litigation." *Sprague*, 133 F.3d at 397.

(4:15CV2449)

The common issue in this case is an alleged uniform practice of violating lease agreements by deducting "post production costs" from the price on which royalties are calculated. ECF No. 103-1 at PageID # 3314. Plaintiffs have provided testimony that all of the leases in the potential class fit into one of three subclasses — Group A, Group B, or Group C — based upon the "slightly varying" language of the royalty provisions. ECF No. 101-1 at PageID #: 2723-25, ¶ 5. Plaintiffs assert that, despite these variations, the legal and factual question facing each subclass is identical — whether Defendants' use of the "netback method" of royalty calculation is consistent with the language of the leases. ECF 103-1 PageID #: 3309, 3314.

Defendants counter these assertions with three arguments. The first is that a "uniform practice," the use of the "netback" method of royalty calculation, is insufficient to create the necessary commonality. ECF No. 113 at PageID#: 3694. But, this argument misstates the law. In fact, *Walmart* suggests that the exact opposite is true — "The only corporate policy . . . is Wal‑Mart's 'policy' of *allowing discretion* by local supervisors over employment matters. On its face, of course, that is just the opposite of a <u>uniform employment practice that would provide the commonality needed for a class action</u>." *Dukes*, 131 S.Ct. at 2554 (italics emphasis in original, underlining added). Commonality exists despite Defendants' argument.

Defendants' second argument is that there can be no commonality because breach of contract cannot be determined without an analysis of the quality of the product produced, the physical location of the well, and the gas gathering infrastructure used at a specific well. ECF Nos. 113 at PageID #: 3692-93 and 114 at PageID #: 3714. Courts are frequently required to

7

(4:15CV2449)

examine the merits at the certification stage, *Dukes*, 131 S. Ct. at 2551, but the examination Defendants contemplate is not necessary for class certification. An analysis of these physical differences would only become necessary for damages calculations and Rule 23 does not require the Court to determine damages on a classwide basis. *Comcast v. Behrend*, 133 S.Ct. 1426, 1437 (2013).

Defendants' third, and primary, argument is that because oil and gas leases are contracts under Ohio law, *Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St.3d 524, 527 (2016), the variations in royalty language among the lease groupings destroy commonality. ECF No. 113 at PageID #: 3695. Class certification is not possible if class members have different contractual rights, as there are no common obligations. *Sprague*, 133 F.3d at 399 (A class could not be certified because different representations, and therefore different contracts, had been made).

Defendants point to two differences in royalty lease language to support their position the presence or absence of a CSR and/or a definitional clause. Defendants argue that the first variation, the presence of a "comparable sale requirement," necessitates a "bifurcated" analysis that is fundamentally different than the analysis required to determine compliance in those leases without the language. ECF No. 113 at PageID #: 3694. The second variation which Defendants contend interferes with commonality are the definitional clauses in some of the oil royalty provisions that dictate the substances included in the provision. ECF No. 113 at Page ID#: 3695. Defendants argue that an individualized analysis is required for all leases because some leases

8

(4:15CV2449)

have this clause or, at the very least, a separate analysis is required for the leases that contain the provision and those that do not. ECF No. 113 at PageID #: 3695.

These variations are insufficient to destroy commonality. While portions of the agreements differ among subclasses, those differences are superficial. Each royalty provision begins with a royalty percentage and the phrase "based upon the gross proceeds paid to the lessee," and the subsequent variations do not modify that gross proceeds language. Indeed, Defendants themselves interpret the language of the provisions uniformly as the same "netback" calculation is used for each royalty provision. ECF Nos. 103-2 at PageID #:3331-32 and 103-3 at PageID #: 3401. These small variations do not change the meaning of the term "gross proceeds" and do not do affect the propriety or impropriety of using the "netback method." Plaintiffs are asking the same question regarding the same words, under the same factual circumstances, and they will each receive the same answer.

The common questions of fact and law presented have satisfied the commonality requirement.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement often merges with the consideration of commonality because both are "guideposts" in determining if a class action is economical and whether the claims are interrelated. *Young*, 693 F.3d at 542 (quoting *Dukes*, 131 S. Ct. at 2551 n. 5). It is a "necessary consequence" of the typicality requirement that the named plaintiffs'

(4:15CV2449)

interests "are aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the classmembers." *Id.* The purpose of this requirement is to "limit the class to those fairly encompassed by the named plaintiff's claims," *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 100 S.Ct. 1698, 1706 (1980), and because this class utilizes subclasses there must be a representative from each subclass among the named plaintiffs, *Roby v. St. Louis Southwestern Ry. Co.*, 775 F.2d 959, 961 (8th Cir. 1985).

Plaintiffs assert that the legal and factual issues common to named Plaintiffs and putative class members are sufficient to satisfy the typicality requirement. Plaintiffs state that the facts of the case — affiliated buyers deducting post-production costs from the purchase price on which royalties are paid — and the central legal issue of the case — the propriety of the "netback" method under the lease agreements — are sufficiently common for all members of the class to create typicality. ECF No. 103-1 at PageID #: 3315.

Defendants' arguments against typicality rest upon the same foundations as the arguments raised against commonality. Defendants argue that (1) Plaintiffs have failed to show there are "no material variations" among the claims and (2) an "individualized analysis" is required to determine liability. ECF No. 114 at PageID #: 3714, n. 15. But, as the commonality discussion states above, there are no "material variations" between the claims of the proposed class members and the named Plaintiffs because each class member has a common claim with a common answer.

10

(4:15CV2449)

An additional consideration required by the facts of this case is whether there is a named representative of each subclass. *Roby*, 775 F.2d at 961 (citing *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (holding that the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members")); *see also* Fed. R. Civ. P. 23(c)(5) (stating that subclasses "are each treated as a class under this rule"). As previously stated, Zehentbauer and Hanover have leases within Group A and Young's lease falls within Group B, but none of the named Plaintiffs' agreements are a part of Group C. As a result Plaintiffs have not satisfied the typicality requirement as to Group C. *Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989).

Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3) with regard to Group A and Group B, but Group C cannot be certified.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This adequacy consideration has two subparts: (1) the named plaintiffs must have a common interest with the rank and file members of the class, and (2) the named plaintiffs must be capable and willing to "vigorously prosecute" the interests of the class through qualified counsel. *Beattie*, 511 F.3d at 563.

The first requirement, a shared common interest, necessitates there be no conflicts of interest between the named plaintiffs and the class. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Plaintiffs assert that there are no conflicts of interest in this case and

11

(4:15CV2449)

Defendants make no allegations to the contrary. ECF No. 103-1 at PageID#: 3316-17. The "vigorous prosecution" aspect of the adequacy requirement goes to the competence of the named plaintiffs and plaintiffs' counsel as class representatives. *In re Am. Med. Sys.*, 75 F.3d at 1083. Defendants contest the adequacy of the representation that named Plaintiffs can provide based upon an alleged lack of "personal knowledge" and the accompanying inability to adequately represent the interests of the class. ECF No. 114 at PageID#: 3718.

Defendants cite Zehentbauer's assertion of the presence of a nonexistent claim and Young's delayed review of the complaint as evidence of an inability to adequately represent the class. ECF No. 114 at PageID#: 3718. But, neither of these facts are sufficient to show that Plaintiffs are inadequate representatives of the class. Plaintiffs have actively participated in the litigation and their appearances at deposition and continued cooperation is sufficient to satisfy Rule 23(a)(4). Plaintiffs are only required to have a "basic understanding" of the case that allows them to properly supervise and direct the attorneys. *Plumbers &Pipefitters Nat'l. Pension Fund v. Burns*, 292 F.R.D. 515, 521 (N.D. Ohio 2013) (Carr, J.). Plaintiffs have also testified that they are aware of their obligations as class representatives and will act accordingly. Deposition of Zehentbauer (ECF No. 100-1) at PageID #: 1423-26; Deposition of Young (ECF No. 100-2) at PageID #: 2260. Defendants do not challenge the competency of Plaintiffs' counsel and the representations made to the Court with respect to the litigation history of Plaintiffs' counsel is sufficient to demonstrate competence. ECF No. 113-1 at PageID#: 3317-18.

12

(4:15CV2449)

The adequacy of representation requirement is satisfied given that there are no conflicts of interest present, Plaintiffs have demonstrated sufficient knowledge of the litigation and their obligations, and Plaintiffs' counsel is competent.

### 5. Ascertainability

Ascertainability, while not expressly required by Rule 23(a), is encompassed within the requirements. *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387, 391 (S.D. Ohio 2008). The "touchstone" of ascertainability is membership criteria that are objectively defined and a membership definition that is not "fail-safe." *Id.* (citation omitted). A "fail-safe" class definition is one that requires a determination on the merits in order to discern membership. *Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 430-31 (6th Cir. 2009). A class that satisfies the ascertainability requirement will list objective criteria that separate class members from nonmembers and will do so without requiring resolution of the merits of a claim. *See id.*

Defendants argue that it will be difficult to determine the beneficiary of the leases and, as such, the class will not be administratively feasible. Defendants state that the Court will be forced to examine each individual lease in order to determine the beneficiary of each royalty. ECF No. 114 at PageID #: 3719. Defendants are making a mountain out of a molehill. Defendants are large sophisticated organizations and no doubt have excellent records of who receives payments for their own accounting purposes. Defendants lease records will be more than sufficient to determine the individual or entity entitled to payment and, to that end, ascertainability is not affected.

Plaintiffs have satisfied the ascertainability requirement implied by Rule 23(a).

13

(4:15CV2449)

### 6. Summary

For the foregoing reasons, the Court finds that Plaintiffs have satisfied the numerosity, commonality, typicality,[2] adequacy, and ascertainability requirements of Rule 23(a).

### C. Rule 23(b)

In addition to the requirements of Rule 23(a), Plaintiffs must also show that the case meets the requirements of at least one of the subcategories set out in Rule 23(b).

Rule 23(b) is satisfied if:

(1) prosecuting separate actions by or against individual class members would create a risk of:
    (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or,
    (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole, or
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
    (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
    (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
    (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

---

[2] For the reasons set forth in Section III.B.3., Plaintiffs have satisfied the typicality requirement of Rule 23(a)(3) with regard to Group A and Group B, but Group C cannot be certified.

14

(4:15CV2449)

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). Plaintiffs assert that a class can be certified under Rule 23(b)(3). ECF No. 103-1 at PageID #: 3318.

### 1. 23(b)(3) Requirements

Plaintiffs are seeking to certify this class under Rule 23(b)(3) and the accompanying requirements that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 2. Predominance

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544 (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir.2011)). Predominance is similar to commonality in that both require plaintiffs to show common issues with common answers, but it is even more stringent in that those issues must be of predominant importance in the litigation. *Id.*

Plaintiffs assert that the lease language of each grouping carries nearly identical meaning and the propriety of the "netback" method is a common issue which, upon resolution, resolves each individual dispute. In Plaintiffs' words, the determination of the propriety of the "netback method" is the "ultimate merit issue." ECF No. 117 at PageID #: 3775. Similar to commonality, Defendants' primary argument opposing predominance is that variations in royalty language

15

(4:15CV2449)

among the subclasses will require individual analyses and as a result there are no common issues to predominate over. ECF No. 113 at PageID # 3695.

Defendants also argue that variations in well location and hydrocarbon quality require individual inquiries. ECF Nos. 113 at PageID #: 3694 and 114-1 at PageID #:3712-3715. It is Defendants' position that, even if the leases were uniform, the determination of hydrocarbon quality will require individualized proof that prevents common issues from predominating.

However, as with commonality, Defendants arguments are insufficient to persuade the Court. The language of each agreement is similar to such a degree that the differences in outcome are nonexistent and Plaintiffs' theory of liability does not require a specific valuation of the products produced at each well. Additionally, the issue of the propriety of the "netback" method is the central issue in this case. The answer to that question will resolve the claims of each and every individual in the class.

The predominance requirement is satisfied.

### 3. Superiority

In addition to the predominance requirement, Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." In making the superiority determination, the Court must balance "the desirability of class treatment with the likely difficulties in managing a class action." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 471 (6th Cir. 2017) (quotation marks omitted).

(4:15CV2449)

Defendants present two arguments as to why the class action method is not the superior form of litigation for these claims. First, Defendants argue there is another case[3] with "very similar issues" being litigated on an individual basis and it follows that this one should be as well. Second, Defendants argue that a class action cannot be the superior method of litigation because there are only individual issues. ECF No. 114 at PageID #: 3717. The superiority test is a balancing test that seeks to weigh the factors of Rule 23(b)(3) and other necessary considerations to determine the superior method of litigation. The existence of an individual litigant does, to some degree, indicate that there is an individualized interest in controlling the litigation which does work against superiority, although the fact that this individual case commenced after the instant case reduces that impact somewhat. Rule 23(b). But, the individual litigant is insufficient to outweigh those factors that point towards superiority. As discussed above, there is a single issue that is common to the entire class and the resolution of that singular issue will effectively resolve the litigation for all class members. Additionally, this class is large and forcing each member of the class to litigate the same issue would be repetitive. It would be incorrect to force each potential class member to file separately when all claims could be litigated efficiently and fairly in one stroke. The large degree of commonality and the size of the putative class make a class action the most manageable and efficient form of litigation.

Defendants' second argument that there are only individual issues is very similar to the argument made against commonality. This argument fails to counter Plaintiffs' commonality

---

[3] *Bounty Minerals, LLC v. Chesapeake Exploration, L.L.C.*, No. 5:17CV1695 (N.D. Ohio filed Aug. 14, 2017) (Lioi, J.).

17

(4:15CV2449)

argument and the Court is not persuaded by its reiteration here.  There is a common issue that can be litigated on a classwide basis    use of the "netback method" of royalty calculation    and none of the individual issues make the class unmanageable.

Superiority is satisfied.

### IV.  Conclusion

For the foregoing reasons, the Court grants in part Plaintiffs' Motion for Class Certification ([ECF No. 103](ECF No. 103)).  The Court certifies the following Class:

> All persons entitled to royalty payments from Chesapeake Exploration, L.L.C., Chesapeake Operating, L.L.C., CHK Utica, L.L.C., Total E&P USA, Inc., Pelican Energy, L.L.C., and/or Jamestown Resources, L.L.C. at any time during the years of 2011 to the present under uniform oil and gas leases, known generally as Gross Royalty Leases, (some originally entered by Buckeye Exploration Corporation) which state that the lessors royalty shall be the stated percentage of the gross proceeds received by the lessee without any deductions except for a pro-rata share of governmentally imposed taxes and fees, in return for granting rights to produce oil, natural gas, and the constituents thereof from real property located in Ohio. Excepted from the foregoing class are persons who have filed separate actions requesting the relief sought here and those who have resolved claims requesting the relief sought here.  Further excepted from the class are any such lessors employed or owned by any of the Defendants.

IT IS SO ORDERED.

| | |
|---|---|
| _July 20, 2018_ | _/s/ Benita Y. Pearson_ |
| Date | Benita Y. Pearson |
| | United States District Judge |

18